## CADICK MILLING CO. v. HAUCK MILLING CO.

Court of Appeals of District of Columbia. Submitted March 16, 1927. Decided April 4, 1927.

No. 1934.

Trade-marks and trade-names and unfair competition ⬤⇒93(3)—Unsupported testimony, of two men regarding events occurring more than 60 years previously held insufficient to establish priority in use of trade-mark.

Unsupported testimony of two old men as to events occurring more than 60 years previously *held* insufficient to establish priority in use of word "Snowflake" as trade-mark for flour.

Appeal from Decision of Commissioner of Patents.

Trade-mark interference proceeding between the Cadick Milling Company and the Hauck Milling Company. From a decision of the Commissioner of Patents, awarding priority to the latter, the former appeals. Affirmed.

Jas. Atkins, of Washington, D. C., for appellant.

H. A. Toulmin and H. A. Toulmin, Jr., both of Dayton, Ohio, for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. Appeal from a decision of the Commissioner of Patents in a trade-mark interference proceeding, awarding priority of adoption and use of the word "Snowflake," as a trade-mark for wheat flour, to the Hauck Milling Company, appellee here.

The Hauck Milling Company has conclusively established adoption and use of this mark since 1866. Supplementing the oral testimony, it produced contemporaneous documentary evidence of a convincing character. This documentary evidence, which includes a sales book kept when the business was founded by appellee's predecessor in title, is not challenged.

Appellant relies solely upon the testimony of two witnesses to establish an earlier date of adoption and use of this mark. One of

these witnesses, about 90 years of age when he testified, stated that he was born and always lived at Grandview, Ind., and remembered the erection of a flour mill there by a Mr. Wilbern. Asked when that was, he replied: "I think it was in 1858; possibly about that time." He had never worked in the mill. He then was asked what kinds of flour the mill sold, and stated: "Well, I used the flour. I bought what they called Snow Flake put up in cotton sacks, mostly in barrels. Before that they retailed in cotton sacks here in the country, 50 pounds to a sack." He was also asked, "When did you begin to buy this flour?" and his answer was: "Soon as they made it. I couldn't give any date. I think in the fall of '58. I couldn't give the day of the month." He subsequently stated that the mill was run by Mr. Wilbern until his death. Asked when that was, he replied: "That was in 1882 or '83. I don't remember the date." On cross-examination, he again was asked whether the mill made any other brands of flour, and answered: "I think they did, but I can't remember, for I didn't use it."

Appellant's other witness, Henry Riley, was 70 years of age when he testified, and also a resident of Grandview, having moved there in 1860. He testified that he went to work in the Wilbern mill in 1864, and that the mill then was making several brands of flour, including "Snow Flake." He was connected with the mill until 1883, the date when he thought the sale to Cadick took place.

Appellant introduced documentary evidence of sales from 1900 to the date when the testimony was taken, but there was no attempt either to introduce such evidence as to sales prior to that date or to account for the failure to do so. The evidence shows that the original mill was standing, and that, for aught that appeared, the original Wilbern books were in existence and available.

We agree with the Commissioner that the unsupported testimony of these two old men, as to events occurring more than 60 years previously, is not sufficient to establish priority. Gaines & Co. v. Rock Spring Distilling Co. (C. C. A.) 226 F. 531, 544; American Stove Co. v. Detroit Stove Works, 31 App. D. C. 304; Barbed Wire Patent Case, 143 U. S. 275, 12 S. Ct. 443, 450, 36 L. Ed. 154; Eibel Co. v. Paper Co., 261 U. S. 45, 60, 43 S. Ct. 322, 67 L. Ed. 523. In the Gaines Case, the court said of the testimony of witnesses as to prior use of the mark involved:

"There is considerable volume of this testimony, but it consists almost wholly of unaided recollections of dates 40 years old, and it is that class of testimony which, by decisions familiar in patent cases, the Supreme Court has refused to accept. True, there is in a trade-mark case no initial presumption of validity to be overcome; but the principles for determining the evidential value of testimony cannot differ according to the subject-matter of the case."

The decision is right and is affirmed.

Affirmed.